### FINK v. BEDELL.

(Circuit Court of Appeals, Third Circuit. August 14, 1924.)

No. 3069.

**1. Trover and conversion ⬤⟳40(4)—Finding of agreement to restore stock within four months warranted.**

Where defendant, sued for conversion of stock which he had been permitted to use as collateral on the purchase of other stock, had written plaintiff that he would pay for the other stock within four months and would restore the collateral on completion of the contract, the jury was justified in assuming that "on completion of contract" meant "within four months."

**2. Fraud ⬤⟳27—Fraud by defendant converting stock established.**

Defendant's misrepresentations, before obtaining possession of all stock he was charged with converting, that the stock already delivered to him was in his possession, when in fact he had sold it, held to establish fraud.

**3. Trover and conversion ⬤⟳49—Defendant liable for value of stock when loaned to him.**

Where defendant had converted stock before plaintiff was fraudulently induced to loan it to him, he was liable for its value when loaned to him, instead of at time when he agreed to replace it.

In Error to the District Court of the United States for the District of New Jersey; William N. Runyon, Judge.

Suit by Margaret H. Bedell against Harold G. Fink. Judgment for plaintiff, and defendant brings error. Affirmed.

Fallon & Fallon, of Hoboken, N. J. (Sharon Graham, of New York City, of counsel), for plaintiff in error.

James R. Stewart, Jr., of Orange, N. J. (William E. Murphy, of New York City, of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

DAVIS, Circuit Judge. The plaintiff, defendant in error, brought suit in the District Court to recover the value of certain shares of stock. This suit contains two causes of action. The first one is to recover the value of 5 shares of Colt Firearms stock, 100 shares of Pierce Oil, and 800 shares of Calumet & Jones, all of which, she alleges, were worth $7,350. She alleges that these shares of stock had, prior to March 17, 1917, been delivered to defendant, who represented to her that he had secured on them for her a loan of $3,400; that he requested from her authority to use the shares of stock as collateral security for his benefit, upon the promise to replace them within four months; that he did not replace the stock, but converted it to his own use; that the representations, by means of which defendant got possession of the stock, were false and made with fraudulent intent, for the purpose of getting possession of the stock, which he has refused to replace or to pay for over and above the loan.

As a second cause of action, plaintiff further alleges that on April 24, 1917, she owned 1,000 shares of Consolidated Petroleum stock, of the value of $5,000; that defendant represented to her that he would have issued to her 5,000 shares of United Tungsten Copper Mines stock, which was worth 60 cents per share, if she would deliver to him properly indorsed certificates for the 1,000 shares of stock of Consolidated Petroleum; that he would sell the 5,000 shares of United Tungsten Copper Mines stock for her at 90 cents per share, and if, at the end of four months, any of the 5,000 shares had not been sold at a price to net her 90 cents a share, she might cancel the proposed sale and defendant would return to her the 1,000 shares of Consolidated Petroleum stock; that, relying on these representations, plaintiff delivered to defendant the certificates, properly indorsed, of the 1,000 shares of Consolidated Petroleum stock; that defendant never delivered to plaintiff any of the 5,000

shares of United Tungsten Copper Mines stock, nor has he returned the 1,000 shares of Consolidated Petroleum, although often requested to do so; that the representations of defendant were false and fraudulent, and were made "for the sole purpose of defrauding and deceiving the plaintiff into parting with possession of her 1,000 shares of Consolidated Petroleum stock."

This suit was brought on both causes of action to recover the value of plaintiff's stock, over and above the loan of $3,400, with interest, which she charges defendant fraudulently converted. It was tried to the court and jury, which rendered a verdict of $10,-405.97 for the plaintiff.

[1] It is not denied that defendant received the shares of stock specified in the complaint and has never returned them. But the terms of the agreement under which he received them are in dispute. In short, the plaintiff contends that the stock was simply loaned to defendant to use as collateral, with the promise of return within four months; while defendant avers that they entered into a joint venture, according to which he was to sell the United Tungsten Copper Mines stock, and was not to return her stock until the completion of that venture; that in pursuance of this venture he, with her consent, sold the securities from time to time, and used the proceeds to pay off the $3,400 loan to plaintiff, and to pay for the United Tungsten Copper Mines stock. There is evidence bearing on both of these contentions, but neither is so clear and free from doubt as not to leave a question for the determination of the jury. The jury, whose function it is to find the facts, heard all the evidence, saw the witnesses, passed upon their credibility, and returned a verdict for the plaintiff. The real question before us is whether or not there was sufficient evidence to sustain the verdict.

On March 17, 1917, defendant telegraphed plaintiff and among other things said: "I can make eight thousand dollars for you in four months. You don't have to put up any money but just authorize me to use your collateral now in my bank. I will replace it within four months." On the same day he wrote her saying: "This is a wonderful opportunity for you, as you do not have to touch a cent of your cash, but only use the paper which is lying idle in my bank. I am taking the risk of replacing it without loss to myself, for I am not even asking you to sell it, but just to allow me the use of it for four months."

In the second cause of action, it appears that defendant sold to plaintiff 5,000 shares of United Tungsten Copper Mines stock at 60 cents per share, and agreed to accept her 1,000 shares of Consolidated Petroleum as collateral for the transaction, and if at the end of four months from that date, April 24, 1917, he had not sold all of the 5,000 shares of the Copper Mines at 90 cents a share for her, she might cancel the unsold portion. The 5,000 shares were never given to her, nor did she receive back the 1,000 shares of Consolidated Petroleum, nor any money from the sale of the stock, although she canceled the contract.

On March 27, 1917, defendant wrote that he had contracted for the purchase of 30,000 shares of United Tungsten Copper Mines stock; that he was to pay for the same within four months, and had also undertaken to sell 18,000 shares within that period. He said: "For allowing me the use of your collateral * * * I agree upon completion of my contract * * * to replace it."

Defendant argues that there was no conversion, because he was to have possession of the stock, not simply four months, but until the contract was completed. Plaintiff testified that she loaned the defendant the use of her securities for four months. Defendant speaks of the completion of his contract as the time of returning these securities, and argues that the plaintiff is therefore not entitled to their return until the contract is completed, however long that may be. But he had just stated that the contract was to be completed in four months. This period fixed the time of completion, and the jury was justified in assuming that the words "four months" and "upon the completion of my contract" meant the same thing.

[2] On August 21, 1917, defendant wrote, saying: "If you decide to sell out the 100 Pierce Oil and the 800 Calument Jerome (Calumet & Jones)," etc. The undisputed fact is that long prior to this time defendant had sold her stock and was keeping her in ignorance of this fact. This representation, that he still had her stock, was not the fact, and so was fraudulent. Before he got possession of all her stock, he represented that her stock which had already been delivered to him was still in his possession, when the fact is that he had disposed of part, if not all, that had been delivered. This facts support the allegations of fraud. But since there was a conversion, which will support the verdict, it was unnecessary to allege or prove fraud.

[3] Defendant says that no basis was laid for assessment of damages, since there was no evidence of the value of the stock at the end of four months, July 27, 1917. But plaintiff did show the value on the date defendant was given permission to use it as collateral. The fact that he had already converted it, or the most of it, at that time, presumably at its full value, renders him liable for its value at that time.

Plaintiff's transaction with Pratt-Grigsby-Conklin Company was foreign to this transaction, and testimony to that effect was inadmissible.

We have considered all the questions raised, and have resolved them against the defendant.

The judgment of the District Court is affirmed.